Jones, J.,
dissenting-.
This was an action on the case, brought by the plaintiff against the defendant, on a hill of exchange, drawn by him on Venables & Lafferty, of New Orleans, at sixty days sight, in favor of John Little, which, by several endorsements, became the property of the plaintiffs. The bill is dated at St. Louis, 27th November, 1817, and was, as stated in the declaration, protested for non-acceptance and non-payment, on the 29th -April, 1818; and the writ on the case was issued on the 22d September, following.
1 The defendant pleaded the general iséue, and on the trial of the- cause, which was-submitted to the Judge without the intervention of a jury, judgment was entered for the defendant. During the. trial, the plaintiff filed a bill of exceptions to the opinion of the Court, stating that the plaintiff, (in order to dispense with the necessity of shewing regular notice to the drawer, of the non-aCceptance of the bill by the drawee,) proved by his counsel, that the defendant (when he was informed by the *29 plaintiff’s attorney that the hill had been returned protested,) said he would pay it when his furs and peltries came down the river. That he did not wish to be sued, as he had been struggling, and malting every exertion to meet his engagements. That, upon being told it would not answer to wait so long with him, the defendant offerred to pay in a bill on Montreal, which was not accepted by the plaintiff’s counsel. That the plaintiff’s counsel then proposed to receive a negotiable bill with endorsers, at sixty days; upon this proposition the defendant said he would deliberate, and give an answer in the course of a week. That about the expiration of that time, the subject of the negotiable note was then mentioned, and pressed upon the defendant by the same person. He then remarked to the witness, that he doubted whether he was liable, and could be made to pay the bill. That the St. Louis Bank ought to pay it, (they were prior endorsees,) on account of having held it up so long, and that he; the defendant, had sustained heavy damages by reason of the bills not having been remitted to the drawees, in New Orleans, in due time, &c., in whosé hands he had, at the time,’ property and funds to a considerable amount, which would have been seemed, if the bill had been forwarded in due season, &c. That the defendant’s counsel objected to the reception of the testimony for the above purpose; that the Court sustained the objection, and gave judgment for the defendant, and that the plaintiff excepted to the opinion of the Court.
The record has been brought up to this Court, by writ of error, and the only question to be decided is, whether from the whole of the testimony, as stated in the bill ■of exceptions, the Courtbelow erred in not receiving it, as conclusive of the defendant, Hanly’s, having thereby waived the want of notice of the dishonor of the bill. It may not be improper (before proceeding into this inquiry) to remark, that the plaintiff must have been convinced of the defendant’s being (on account of the laches of the holders) discharged in law of all liability to pay the bill, or he would have produced the protest on the trial, and not have rested his cause on an implied waiver of notice.
The plaintiff’s counsel have contended, that the conversations which passed between him and the defendant, amount not only to an express promise to pay, but .also to a waiver of legal notice of the bill having been dishonored; and as authority, he has cited Ckitty on Bills, 248.
If the maker or endorser of a dishonored bill, will, with the full knowledge, not only of all the circumstances, but also of his being (on account of the laches of the ’holder) discharged, in law, from all liability, make an express promise to pay such dishonored bill, or note, he will be compelled to do so ; and such promise amounts in law, to^.waijjj^C ,notj^,e — and I will lay it down as a well established principle and rule, that no premise'or offer made, with a view to a compromise of any matter in dispute, shall be permitted to be given in evidence against the party making it, if such compromise does not take effect. Having thus stated the law, I will proceed to examine the facts, as stated in the bill of exceptions, and give my opinion as to their legal operation. Hanly, on being applied to by the plaintiff’s counsel, (but at what time, is not stated, probably a few days before the date of the writ,) for payment of the bill, which he was then informed had been returned protested, and was in the attorney’s hands, made him two several propositions or offers, one to pay when his furs came down the river, and the other by a bill on Montreal; neither of these propositions having been acceded to, the plaintiff’s attorney made a third one, to the ^defendant, viz: to accept a bill at sixty days, with good endorsers; on which the defendant requested a week’s time for deliberation, which was agreed to. At the *30 expiration of the time, or about it, the attorney called on the defendant and mentioned the subject of the negotiable note in pressing terms; then the defendant expressed' his doubts whether he was liable, and could be made to pay the bill. That the Bank of St. Louis (who, it appears from the declaration, were prior endorsees,) ought to pay it, on account of their having held it up so long; and that he, the defendant, had sustained heavy damages by reason of the bills not having been remitted to the drawees in New Orleans in due time, in whose hands he then had property and funds to a large amount, which could have been secured, if the bill had been forwarded in due season. The necessary conclusions to he drawn from this answer axe, that the defendant had funds in the hands of the drawees, which, on account of their failure, or some other casualty, he had lost, and that, therefore, the defendant suffered a real loss on account of the laches of the holder. If these facts were not true, and the defendant had not funds in the hands of the drawee, the plaintiff might easily have made the necessary proofs, which could have superseded the want of notice.
I am far from considering the declarations made by the defendant to the attorney, as amounting either to an express or legal implied promise to pay ; on the contrary, I look upqn them only as propositions or offers for a compromise, which, not being acceded to, are of no legal effect; and it appears, to me that the plaintiff’s attorney looked upon them also in the same light, or he would not have made a proposition, different from either of those offered by the defendant, and give him a week’s time to deliberate whether he would close with it or not.
I will now take a short view of the authorities, and shew, from them, under what circumstances the drawer or endorser of a dishonored hill will be- held liable^ under a promise to pay, and what will amount to a waiver, in law, of due demand and notice. A promise to pay a dishonored bill, with a full knowledge of all the circumstances, will be deemed a waiver of due demand and notice, 4 Dallas, 109, 3 Johnson, 68, 5 Johnson, 248 and 375, 9 Mass. Reports, 1, and 12 Mass. Reports, 52. But this promise must be explicit, and made out by the most clear and unequivocal testimony; 5 Johnson, 375, 12 Johnson, 423.
What a man says under the surprise of a sudden and unexpected demand, ought not to be construed with a good deal of strictness, especially if he retract a few days after-wards; 4 Mass. Reports, 341. (
If, under ignorance of the law, or through mistake, a man promises to pay a dishonored bill or note, he is not liable; 7 Mass. Reports, 449, and 483, and 4 ■ Reports, 341, This principle is more fully laid down in the case of Browsdaille v. Levie, in 4 Taunton’s Reports, 93, where Chief Justice Mansfield, in delivering the opinion of the Court, said that he did not find any case in which an endorser, after having been discharged by the laches of the holder, has been held liable, except when am express promise topay the bill has been proved. That in most cases, where the defendants have been held liable, they have either made an express promise to pay, or a promise, when they had, at that time, a full knowledge that they were discharged; and in that case-®' Court held the defendant not bound, although he had, on being informed that the bill had been dishonored, written to the holders to remit it to his bankers, (in case they thought him unsafe,) on the ground that it did not amount to a waiver of laches, as if did not appear that, at the time of making the promise by the letter he knew he war-discharged in law.
*31 In the case of Cuming v. Tronde, 2 Campbell’s Reports, 106, Lord Kenyon, (on the trial of a cause, wherein it was insisted, that an offer made by endorsee, to pay a protested bill of exchange, on terms which were not agreed to,) said, had the plaintiff accepted the order, well and good ; if not, things were to remain on the same foot-ing as they were before it was made ; and it was decided in New York, that a qualified or conditional promise to pay a dishonored bill which is rejected by the holder, does not amount to a waiver of notice. Several other authorities may be cited to prove, that the promises to pay a dishonored bill or note, made by a defendant, and so as tobe binding on him, and amount to a waiver of notice, must be made “with a full knowledge of all the circumstances, not under the surprise of an unexpected demand, or ignorance of the law, or mistake.” The promise must be explicit, and proved by the most clear and unequivocal testimony; and offers, or propositions for a compromise, which are not accepted of, are not admissible in evidence against the party who made them, nor do they amount to a waiver of notice.
I have considered this case as if the testimony set forth in the bill of exceptions had been admitted in its fullest extent; but whether that evidence was taken into consideration by the Judge, to whose decision the case was left, both as to law and to fact, without the intervention of jury, is to me wholly immaterial, as I consider his decision correct in law and fact; and, therefore, the judgment of the Court below, ought, in my opinion, to be confirmed with costs.